**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| BROOKWOOD FUNDING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 1:14-cv-2960-SCJ |
| AVANT CREDIT CORPORATION, | ) | |
| INC., AVANTCREDIT OF GEORGIA, | ) | |
| LLC, & DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR INJUNCTIVE
RELIEF AND DAMAGES**

Plaintiff Brookwood Funding, LLC ("Plaintiff") hereby brings this First

Amended Complaint against Defendants Avant Credit Corporation, Inc. ("Avant"),

AvantCredit of Georgia, LLC ("Avant Georgia"), and Does 1-10 (collectively,

"Defendants"), and shows the Court the following in support thereof.  All

allegations herein are made upon information and belief, except those pertaining to

Plaintiff.

**NATURE OF THE ACTION**

1.

Plaintiff has common law and statutory rights in the "Brookwood" service

mark and promotes consumer-lending services with that mark.  Without Plaintiff's

permission or consent, Defendants have used Plaintiff's mark to promote consumer-lending services that are substantially similar to, and directly compete with, the services provided by Plaintiff.  In this manner, Defendants are stealing Plaintiff's goodwill, confusing the consuming public, and damaging Plaintiff's brand, all for Defendants' financial gain.  This is an action to enjoin Defendants' unlawful conduct and recover damages from Defendants for the same.

## PARTIES, JURISDICTION, AND VENUE

2.

Plaintiff Brookwood Funding, LLC is a limited liability company organized and existing under the laws of the State of Georgia.  Plaintiff's principal place of business is located at 3440 Preston Ridge Road, Suite 500, Alpharetta, Georgia 30005.

3.

Plaintiff owns the "Brookwood" service mark (the "Brookwood Mark") and performs certain management functions for a number of consumer-lending companies that are licensed to use the Brookwood Mark.  Plaintiff and the Brookwood Lenders are closely affiliated by common ownership and control.

4.

Defendant Avant Credit Corporation is a corporation organized and existing under the laws of the State of Delaware.  Avant's principal place of business is located at 1900 N. Hoyne Avenue, Chicago, Illinois 60647.  Avant may be served with process by delivery of a copy of the summons and this Complaint to its registered agent Anna Fridman, 640 N. LaSalle Street, Suite 535, Chicago, Illinois 60654.

5.

Defendant AvantCredit of Georgia, LLC is a limited liability company organized and existing under the laws of the State of Delaware.  Avant Georgia's principal place of business is located at 640 N. LaSalle Street, Suite 535, Chicago, Illinois 60654.  Avant Georgia may be served with process by delivery of a copy of the summons and this Complaint to its registered agent CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361.

6.

Defendants are in the business of providing consumer loans.  Defendants offer these loans through various channels, including through their website www.avantcredit.com.

7.

Defendants Does 1-10 are those currently-unknown defendants who are acting in concert with Avant and Avant Georgia to accomplish the acts described in this Complaint.  Once identified through discovery, these persons and/or entities will be substituted in place of Does 1-10.

8.

Avant Georgia is registered to do business in Georgia.

9.

Defendants regularly transact and solicit business in Georgia.

10.

One of the ways Defendants transact and solicit business in Georgia is through their website www.avantcredit.com.  For example:

  a) Defendants provide testimonials from Georgia customers, including a testimonial from "Nikki S." in "Atlanta, GA" that reads:  "I had no issues whatsoever when I applied for a line of credit.  The customer service was great!  I will recommend this company to my friends and family."

  b) Defendants have a page called "Rates and Terms" on their website.  On that page, Defendants have another page dedicated to "Georgia

4

Personal Installment Loans," where Defendants describe various information about the Georgia personal installment loans they offer, and tout the "Certificate of Authority" from the "State of Georgia Secretary of State, Corporations Division," declaring that Defendant Avant Georgia has been authorized to do business in Georgia since January 9, 2013.

11.

Defendants also solicit business in Georgia through search engines.  For example, Defendants purchase advertisements on search engines, including Google, Bing, and Yahoo, that display to online consumers located in Georgia.

12.

This lawsuit arises out of the facts described in the foregoing paragraph and more specifically described below.

13.

This Court has personal jurisdiction over Defendants.

14.

This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1338(a) and (b), and principles of supplemental jurisdiction.

15.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## STATEMENT OF FACTS

**A.    Plaintiff invests substantial resources into developing its Brookwood Mark.**

16.

Plaintiff owns all right, title, and interest in the Brookwood Mark.

17.

The Brookwood Mark is currently pending Federal Registration on the Principal Register.  The USPTO initially rejected the application for registration of the Brookwood Mark because another entity has a registration for "Brookwood" for investment banking services.  However, Plaintiff does not use the Brookwood mark for investment banking services.  Therefore, Plaintiff is confident that the USPTO's decision will be reversed on reconsideration or appeal, which Plaintiff is currently pursuing.

18.

The Brookwood Mark encompasses the use of the word "Brookwood" in connection with consumer-lending services.

6

19.

Before Plaintiff owned the Brookwood Mark, the mark was owned and consistently used by entities closely affiliated with Plaintiff by common ownership and control (Plaintiff's "Predecessors").  Plaintiff's Predecessors offered the same consumer-lending services that Plaintiff and the Brookwood Lenders currently offer.

20.

Plaintiff has licensed the Brookwood Lenders to use the Brookwood Mark.

21.

The Brookwood Mark is inherently distinctive.

22.

Since at least November 2007, Plaintiff and its Predecessors have spent significant time, money, and effort engaging in extensive advertising, marketing, and promotion of the Brookwood Mark and the services associated with the Brookwood Mark throughout the United States.

23.

Much of the Brookwood Lenders' advertising, marketing, and promotional efforts include the use of the Brookwood Mark on the internet.  For example, the Brookwood Lenders advertise the Brookwood Mark through their website,

www.brookwoodloans.com, Google's AdWords program, www.yellowpages.com, and various other search engines and websites.

24.

The Brookwood Lenders also advertise, market, and promote the Brookwood Mark through other channels outside of the internet.

25.

As a result of the foregoing advertising and promotional efforts and many other advertising and promotional efforts, and the consistent high quality of the services marketed by the Brookwood Mark, the Brookwood Mark has acquired and now enjoys a high degree of distinctiveness and secondary meaning.

26.

The Brookwood Mark is now recognized by the consuming public generally, and Plaintiff's and the Brookwood Lenders' customers specifically, as identifying exclusively the Brookwood Lenders' consumer-lending services.

27.

Plaintiff and the Brookwood Lenders are the senior users of the Brookwood Mark on the internet and in every state in which Plaintiff and the Brookwood Lenders conduct business.

**B.**   **Defendants operate a directly-competing consumer loan business.**

28.

Defendants are also in the business of providing consumer-lending services.

29.

Defendants market their consumer-lending services primarily on the internet.

30.

Defendant Avant has been providing consumer-lending services since 2012.

31.

Defendant Avant Georgia has been providing consumer-lending services since 2013.

32.

The consumer-lending services Defendants provide are substantially similar to, and directly compete with, the consumer-lending services the Brookwood Lenders provide.

**C.**   **Defendants unlawfully use the Brookwood Mark to steal the Brookwood Lenders' customers.**

33.

Google AdWords is a keyword-triggered online advertising program that generates the "Sponsored Links" section of a search-results page generated by Google's search engine.  Entities may purchase or bid on certain keywords through

9

the AdWords program, paying Google for the right to have those certain keywords trigger an advertisement of their own sponsored link in the Sponsored Links section of a search-results page generated by Google.

34.

Entities may also pay Google for the right to have those certain keywords facially incorporated into the language of their own unique, sponsored link, through a process known as "keyword insertion."  Through this process, advertisers can dynamically update the text of their advertisements by inserting the keyword that is used to target the ad into the text of the ad itself.

35.

Use of the Google AdWords program is governed by the "Google Inc. Advertising Program Terms," ("AdWords terms") a true and correct copy of which is attached hereto as Exhibit A.

36.

These terms provide that advertisers using the AdWords program are "solely responsible for all . . . [a]d trafficking or targeting decisions . . . ."

37.

In other resources available to help advertisers understand and comply with the AdWords terms, Google explains that "[a]dvertisers are responsible for the

keywords that they choose to trigger ads and the text that they choose to use in those ads." Google emphasizes that the AdWords terms "prohibit intellectual property infringement by advertisers."

38.

By using the AdWords program, Defendants agreed to be bound by the AdWords terms.

39.

Pursuant to the AdWords terms, Defendants agreed to be "solely responsible for all . . . [a]d trafficking or targeting decisions . . . ."

40.

Defendants purchased the right to have the keyword "Brookwood Loans" trigger the advertisement of a sponsored link to their website, www.avantcredit.com, in the Sponsored Links section of search-results generated by Google.

41.

Defendants also purchased the right to facially incorporate the words "Brookwood" and "Brookwood Loans" into the plain language of Defendants' own sponsored link. Alternatively, Defendants caused the words "Brookwood"

11

and "Brookwood Loans" to appear in the plain language of Defendants' sponsored link through Defendants' participation in Google's AdWords program.

42.

As a result of one of the types of conduct in the foregoing paragraph, when consumers enter "Brookwood Loans" into Google during certain times that Defendants' ad is running, a sponsored link to Defendants' website, www.avantcredit.com, is the first result.

43.

Defendants' first-ranked sponsored link reads "Brookwood loans – Try Avant Loans."

44.

The allegations in the foregoing three paragraphs are evidenced by the attached Exhibit B, which is a true and correct copy of the first page of recent Google search results for "Brookwood Loans."

45.

When consumers who initially searched for "Brookwood Loans" click on Defendants' sponsored link, they are taken directly to Defendants' website, www.avantcredit.com. There, consumers are enticed to purchase consumer-

lending services from Defendants, one of Plaintiff's and the Brookwood Lenders' direct competitors.

46.

There is not, nor has there ever been, anything on www.avantcredit.com to disabuse consumers of the notion that there is some relationship between Plaintiff or the Brookwood Lenders on the one hand and Defendants on the other.

47.

There is not, nor has there even been, anything on www.avantcredit.com that would have made clear to consumers that the Brookwood Lenders' and Defendants' services are competing services from different sources.

48.

Defendants have used Google's AdWords program to insert purchased keywords into other advertisements or sponsored links.  For example, Defendants have inserted keywords into the ads "Avantcredit.com – Try Avant Credit Today" and "Get Avant Credit Loans – Flexible Rates & Terms."

49.

Upon information and belief, Defendants have caused the term "Brookwood" to appear in the text of other of Defendants' Google advertisements

or sponsored links, such as those referenced in the paragraph above, in addition to the "Brookwood loans – Try Avant Loans" advertisement.

50.

Depending on various factors, such as the date and time of the search and the IP address of the searcher, Defendants' advertisements that incorporate the Brookwood Mark could appear at different ranks and places in Google's search results, in different proximities to Plaintiff's website

51.

As described in the foregoing paragraphs, Defendants have intentionally used the Brookwood Mark to promote Defendants' own consumer-lending services through Google.

52.

Defendants have also used the Brookwood Mark to promote Defendants' services through search engines and websites other than Google in a manner similar to that described in the foregoing paragraphs.

53.

Defendants have purchased advertising through the paid advertising programs of Yahoo and Bing, among others.  True and correct copies of

screenshots evidencing some of Defendants' paid advertising through various search engines are attached hereto as composite Exhibit C.

54.

These advertising programs also allow users to purchase certain keywords, which then trigger an advertisement of the user's own sponsored link in the Sponsored Links sections of these other search engines.

55.

As with Google AdWords, these other advertising programs allow advertisers to pay for the right to have keywords facially incorporated into the language of their own unique, sponsored link, through the use of keyword insertion technology.

56.

Upon information and belief, Defendants have also purchased the right to use (and have in fact used) the Brookwood Mark in these other advertising programs, causing the Brookwood Mark to display in a manner that is visible to consumers online in connection with the sale of Defendants' services in a variety of distinct ads selected by Defendants.

57.

In this manner, Defendants have intentionally used the Brookwood Mark to promote Defendants' own consumer-lending services through these other search engines.

58.

Defendants have also included the Brookwood Mark in the meta tags of www.avantcredit.com.  Defendants have done this in order to increase the organic page rank of that site on Google and other search engines.

59.

Plaintiff has not given Defendants permission to use the Brookwood Mark in any manner.

60.

By using the Brookwood Mark in manners visible to consumers, described above, Defendants are attempting to capitalize on the goodwill of the Brookwood Mark to confuse consumers into mistakenly believing that Defendants are, or are associated or affiliated with, Plaintiff or the Brookwood Lenders.  In this manner, Defendants induce consumers to apply for loans through www.avantcredit.com.

61.

Defendants are not Plaintiff or any of the Brookwood Lenders.

62.

Defendants are not associated or affiliated with Plaintiff or any of the Brookwood Lenders.

63.

Defendants have financially benefited and reaped ill-gotten gains from their intentional, unauthorized use of the Brookwood Mark.

64.

Meanwhile, Plaintiff and the Brookwood Lenders have been and will continue to be seriously damaged by Defendants' use of the Brookwood Mark. Specifically, consumers will purchase services from Defendants, believing they are associated with Plaintiff or the Brookwood Lenders.  Consumers who purchase Defendants' services because they mistakenly believe such services are offered by (or are affiliated with) Plaintiff and the Brookwood Lenders will blame Plaintiff and the Brookwood Lenders for problems with the quality of those services.  As a result, the value of the Brookwood brand will be irreparably diminished and diluted.  Moreover, even if the consumers do not experience problems with Defendants' services, Plaintiff will be irreparably harmed by the fact that the reputation of the services associated with the Brookwood Mark is at the mercy of

Plaintiff's competitors, and by the fact that the strength of the Brookwood Mark is being diluted.

65.

Unless enjoined by this Court, Defendants' actions will continue to cause irreparable injury to Plaintiff by, *inter alia*:  (a) confusing and deceiving consumers into incorrectly believing that Defendants' infringing marketing programs and associated services are affiliated, connected, sponsored, approved, or otherwise associated with Plaintiff and the Brookwood Lenders; (b) diverting consumers who would otherwise have purchased Plaintiff's or the Brookwood Lenders' services to Defendants' website to purchase Defendants' services; (c) disrupting Plaintiff's and the Brookwood Lenders' relationships with existing customers; (d) damaging the reputation of the Brookwood Mark, Plaintiff and the Brookwood Lenders; (e) decreasing the capacity of the Brookwood Mark to identify and distinguish quality consumer-lending services; and (f) causing Plaintiff to lose customers and profits.

**D.** **Defendants' stubborn litigiousness necessitates this lawsuit.**

66.

When Plaintiff discovered Defendants unlawful conduct, described above, Plaintiff contacted Defendants, through counsel, in an attempt to avoid litigation.

67.

Plaintiffs communicated a written settlement demand to Defendants on August 14, 2014. Defendants did not respond to this demand.

68.

On August 25, 2014, Plaintiff again contacted Defendants in writing. In this communication, Plaintiff explicitly stated that it would have no choice but to sue if Defendants did not respond to Plaintiff's communication by the following day.

69.

As of the date of the filing of this litigation, Defendants had still not responded to Plaintiff's August 14 or 25 correspondence.

70.

As a result of Defendants' stubborn litigiousness, Plaintiff was forced to file this litigation and incur attorneys' fees and other litigation expenses.

71.

Defendants' actions constitute willful conduct, malice, wantonness, oppression and the entire want of care which raises the presumption of conscious indifference to consequences.

## COUNT 1
## Georgia Common Law Trademark Infringement

72.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

73.

Plaintiff is the senior user of the Brookwood Mark on the internet and in every state in which the Brookwood Lenders conduct business.

74.

Defendants and/or their agents have infringed and/or diluted the Plaintiff's mark and are continuing to infringe and/or dilute Plaintiff's mark by using the Brookwood Mark in connection with the sale and advertising of financial services without the consent of Plaintiff.

75.

Defendants have used, and will continue to use, Plaintiff's Brookwood Mark to falsely advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the Brookwood Lenders' business and reputation, and promote its financial

products and services in direct competition with Plaintiff and the Brookwood

Lenders in the same channels of trade and marketing.

76.

Such use by Defendants is deliberate, willful, and without the consent of

Plaintiff.

77.

As a direct and proximate result of the foregoing acts, practices and conduct,

Plaintiff has been, and is likely to continue to be, substantially injured in its

business, including the reputation of the Brookwood Mark, resulting in lost

revenues and profits, and the diminished goodwill and reputation of itself and the

Brookwood Lenders.

78.

Plaintiff has no adequate remedy at law to prevent such infringement.

79.

Unless enjoined by the Court, Defendants will continue to infringe on the

Brookwood Mark, and injunctive relief is therefore required to prevent

Defendants' continued infringement and to ameliorate and mitigate the injury to

Plaintiff.

## COUNT 2
## Federal Unfair Competition
## (Lanham Act, 15 U.S.C. § 1125(a))

80.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

81.

The Brookwood Mark is inherently distinctive and has acquired secondary meaning in the minds of Plaintiff's and the Brookwood Lenders' existing and prospective customers, causing them to associate consumer loan services bearing the Brookwood Mark with Plaintiff and the Brookwood Lenders.

82.

Defendants have used, and will continue to use, the Brookwood Mark in commerce in connection with the marketing of consumer-lending services.

83.

In using the Brookwood Mark as described herein, Defendants are deliberately and willfully capitalizing on the goodwill associated with the Brookwood Mark to cause confusion or mistake about the origin of the services Defendants are marketing, to derive a benefit from Plaintiff's and the Brookwood Lenders' business and reputation, and to promote consumer loan services in direct competition with Plaintiff and the Brookwood Lenders in the same channels of

22

trade and marketing that Plaintiff and the Brookwood Lenders use to promote their services.

84.

In using the Brookwood Mark as described herein, Defendants are also deliberately and willfully diverting consumers who would otherwise have purchased Plaintiff's or the Brookwood Lenders' services to Defendants' website to purchase Defendants' services.

85.

Defendants' use of the Brookwood Mark is causing and is likely to continue causing confusion, mistake, or deception as to the affiliation, connection, or association of Defendants on the one hand with Plaintiff and the Brookwood Lenders on the other.

86.

Neither Plaintiff nor the Brookwood Lenders have consented to Defendants' use of the Brookwood Mark.

87.

The services Defendants are promoting on www.avantcredit.com are in no way affiliated, connected, or associated with Plaintiff or the Brookwood Lenders.

88.

Through the foregoing conduct, Defendants are willfully and intentionally confusing the public.  Therefore, Plaintiff is entitled to a presumption that Defendants' use of the Brookwood Mark is causing a likelihood of confusion.

89.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

90.

Plaintiff has no adequate remedy at law to prevent Defendants' wrongful conduct.

91.

Unless enjoined by the Court, Defendants will continue to infringe on the Brookwood Mark and otherwise violate Plaintiff's rights and injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiff.

**COUNT 3**
**Federal Trademark Dilution**
**(Lanham Act, 15 U.S.C. § 1125(c))**

92.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

93.

As noted above, Plaintiff and its Predecessors have spent significant time, money, and effort engaging in extensive advertising, marketing, and promotion of the Brookwood Mark and the services associated with the Brookwood Mark throughout the United States since at least November 2007.

94.

During this period, Plaintiff and the Brookwood Lenders have spent substantial sums to advertise the consumer-lending services they provide.  In addition to prominently featuring the Brookwood Mark on Plaintiff's website, Plaintiff and the Brookwood Lenders have advertised their consumer-lending services using the Brookwood Mark in other forms of online advertising and in forms of advertising other than online.

95.

As a result of the forgoing, the Brookwood Mark has become famous and is now widely recognized by the consuming public of the United States as a designation of source of the services promoted by the Brookwood Mark.

96.

After the Brookwood Mark became famous, Defendants began using the Brookwood Mark in commerce, in the manners described above.

97.

In using the Brookwood Mark, Defendants willfully intended to trade on the recognition of the Brookwood Mark.

98.

Defendants' use of the Brookwood Mark is causing dilution of that mark by blurring by impairing the distinctiveness of the Brookwood Mark and lessening the capacity of that mark to identify and distinguish Plaintiff's services.

99.

Defendants' use of the Brookwood Mark is causing dilution of that mark by tarnishment by harming the reputation of the Brookwood Mark.

100.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

101.

Plaintiff has no adequate remedy at law to prevent such dilution.

102.

Unless enjoined by the Court, Defendants will continue to dilute the Brookwood Mark and injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiff.

**COUNT 4**
**Georgia Statutory Trademark Dilution**
**(O.C.G.A. § 10-1-451(b))**

103.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

104.

Defendants and/or their agents have diluted the Brookwood Mark and are continuing to dilute the Brookwood Mark by using the Brookwood Mark in connection with the sale and advertising of financial services without the consent of Plaintiff.

105.

Defendants have used, and will continue to use, Plaintiff's Brookwood Mark to advertise, cause confusion or mistake, derive a benefit from Plaintiff's and the Brookwood Lenders' business and reputation, and promote its financial products and services in direct competition with Plaintiff and the Brookwood Lenders in the same channels of trade and marketing.

106.

Such use by Defendants is deliberate, willful, and without the consent of Plaintiff.

107.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured in its business, including the reputation of the Brookwood Mark, resulting in lost revenues and profits, and the diminished goodwill and reputation of itself and the Brookwood Lenders.

108.

Defendants' use of the Brookwood Mark is causing dilution of that mark by blurring by impairing the distinctiveness of the Brookwood Mark and lessening the capacity of that mark to identify and distinguish Plaintiff's services.

109.

Plaintiff has no adequate remedy at law to prevent such dilution.

110.

Unless enjoined by the Court, Defendants will continue to dilute the Brookwood Mark, and injunctive relief is therefore required to prevent Defendants' continued dilution and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 5
### Georgia Statutory Unfair Competition
### (O.C.G.A. § 23-2-55)

111.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

112.

Defendants have encroached, and will continue to encroach, on Plaintiff's consumer-lending business and licensing of the Brookwood Mark by using the Brookwood Mark in connection with the sale and advertising of competing consumer-lending services without the consent of Plaintiff.

113.

In so doing, Defendants intend to deceive and mislead the public about the origin of the services they market.

114.

Such use by Defendants is deliberate, willful, and without the consent of Plaintiff.

115.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

116.

Plaintiff has no adequate remedy at law to prevent such unfair competition.

117.

Unless enjoined by the Court, Defendants will continue to engage in unfair competition, and injunctive relief is therefore required to prevent Defendants' practices and to ameliorate and mitigate the injury to Plaintiff.

**COUNT 6**
**Georgia Deceptive Trade Practices**
**(O.C.G.A. §§ 10-1-370 through 10-1-375)**

118.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

119.

As explained above, Defendants have engaged in deceptive trade practices by:  (a) falsely passing off the consumer-lending services marketed on www.avantcredit.com as affiliated with Plaintiff and the Brookwood Lenders; (b) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the services marketed on www.avantcredit.com; (c) falsely representing that the services marketed on www.avantcredit.com have sponsorship and approval of, or affiliation or connection with, Plaintiff and the Brookwood Lenders; (d) falsely representing that

the services offered on www.avantcredit.com are of the same quality as those offered by Plaintiff and the Brookwood Lenders; (e) disparaging the services of Plaintiff and the Brookwood Lenders by falsely representing that such services are offered on www.avantcredit.com; (f) diverting consumers who would otherwise have purchased the Brookwood Lenders' services to Defendants' website to purchase Defendants' services.

120.

Defendants have willfully engaged in the trade practices described in the foregoing paragraph, knowing them to be deceptive.

121.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been and is likely to continue to be substantially injured, as described above.

122.

Plaintiff has no adequate remedy at law to prevent such deceptive trade and unfair business practices.

123.

Unless enjoined by the Court, Defendants will continue to engage in deceptive and unfair practices, and injunctive relief is therefore required to prevent such practices and to ameliorate and mitigate the injury to Plaintiff.

**COUNT 7**
**Georgia Statutory False Advertising**
**(O.C.G.A. §§ 10-1-420 through 10-1-427)**

124.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

125.

Defendants have used and will continue to use Plaintiff's Brookwood Mark in search-engine advertising in order to mislead and trick the public into believing that the consumer-lending services Defendants offer are related to, sponsored by, share a corporate history or are affiliated with the Plaintiff and/or the Brookwood Lenders.

126.

The advertisements referenced in the foregoing paragraph are untrue or fraudulent. Defendants know, or with the exercise of reasonable care should know, that such advertisements are untrue or fraudulent.

127.

Defendants' false advertisements have had a material effect on the purchasing decisions of prospective consumers of consumer-lending services.

128.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

129.

Plaintiff has no adequate remedy at law to prevent such false advertising.

130.

Unless enjoined by the Court, Defendants will continue to promulgate false advertisements, and injunctive relief is therefore required to prevent Defendants' continued advertisements and to ameliorate and mitigate the injury to Plaintiff.

## **COUNT 8**
### **Federal False Advertising**
### **(Lanham Act, 15 U.S.C. § 1125(a))**

131.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

132.

Defendants falsely and misleadingly stated in online commercial advertising, described above, that their consumer financial services are related to, sponsored by, or affiliated with Plaintiff and the Brookwood Lenders.

133.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been, and is likely to continue to be, substantially injured, as described above.

134.

Plaintiff has no adequate remedy at law to prevent such false advertising.

135.

Unless enjoined by the Court, Defendants will continue to promulgate false advertisements, and injunctive relief is therefore required to prevent Defendants' continued advertisements and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 9
### Georgia Common Law Intentional Interference with Business Expectancy

136.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

137.

Plaintiff and the Brookwood Lenders have prospective and existing business relationships with consumers in need of consumer-lending services.

138.

Defendants induced these consumers not to enter into or continue a business relationship with Plaintiff and the Brookwood Lenders by misleading them into believing Defendants are or were affiliated with Plaintiff and the Brookwood Lenders, and thereby inducing them into doing business with Defendants instead of Plaintiff and the Brookwood Lenders.

139.

In perpetrating the foregoing scheme, Defendants acted improperly, without privilege, with malice, and with intent to injure Plaintiff's and the Brookwood Lenders' business.

140.

As a direct and proximate result of the foregoing acts, practices and conduct, Plaintiff has been and is likely to continue to be substantially injured, as described above.

141.

Plaintiff has no adequate remedy at law to prevent such Defendants' tortious conduct.

142.

Unless enjoined by the Court, Defendants will continue to engage in such tortious conduct, and injunctive relief is therefore required to prevent such conduct and to ameliorate and mitigate the injury to Plaintiff.

## COUNT 10
### Litigation Expenses
### (O.C.G.A. § 13-6-11)

143.

Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

144.

As set forth above, Defendants have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

145.

Pursuant to O.C.G.A. § 13-6-11, Plaintiff is therefore entitled to recover all the expenses it has incurred and will incur pursuing this action including, but not limited to, reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

a)      Enter judgment in favor of Plaintiff and against Defendants on the counts above;

b)      Order Defendants to pay punitive damages for their willful conduct, malice, wantonness, oppression and the entire want of care which raises the presumption of conscious indifference to consequences;

c)       compensate Plaintiff in the amount of three times Plaintiff's actual damages, in accordance with 15 U.S.C. §1117(a);

d)      Order Defendants to account for and disgorge the profits derived from their unlawful acts, in accordance with 15 U.S.C. §1117(a);

e)      Order Defendants to reimburse Plaintiff for the attorneys' fees, expenses, and costs Plaintiff incurs pursuing its claims, in accordance with federal and Georgia law, including without limitation 15 U.S.C. §§ 1117(a), O.C.G.A. § 10-1-373(b) and O.C.G.A. § 13-6-11;

f)      Issue a preliminary and, ultimately, a permanent injunction prohibiting Defendants, pursuant Fed. R. Civ. P. 65, 15 U.S.C. § 1116, and/or other applicable law, from using the Brookwood Mark or otherwise attempting to solicit, divert, take away or attempt to divert or take away any existing customers of Plaintiff and the Brookwood Lenders;

g)      Order Defendants to file with the Court and serve on Plaintiff a sworn written report setting forth in detail the manner and form in which Defendants have complied with the injunction issued by this Court, pursuant to 15 U.S.C. § 1116;

38

h)    Grant Plaintiff prejudgment interest on the amounts awarded; and

i)    Grant Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all triable issues of fact.

Respectfully submitted this 15th day of December, 2014.

WARGO & FRENCH LLP

/s/ Ryan D. Watstein
Joseph D. Wargo
Georgia Bar No. 738764
jwargo@wargofrench.com
Ryan D. Watstein
Georgia Bar No. 266019
rwatstein@wargofrench.com
999 Peachtree Street NE
26th Floor
Atlanta, GA  30309
Phone:  (404) 853-1500
Fax:  (404) 853-1501
*Attorneys for Plaintiff*

39

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel for Plaintiff certifies that counsel have prepared the foregoing **FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** in Times New Roman 14-point type, which is one of the font and point selections approved by the Court in Local Rule 5.1(B).

WARGO & FRENCH LLP

/s/ Ryan D. Watstein
Ryan D. Watstein

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2014, I electronically filed the

foregoing **FIRST AMENDED COMPLAINT FOR INJUNCTIVE**

**RELIEF AND DAMAGES** with the Clerk of Court using the CM/ECF System,

which will automatically send e-mail notification of such filing to the following

attorneys of record:

Jami A. Gekas, Esq.
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654

Brooke L. French, Esq.
CARLTON FIELDS JORDEN BURT, P.A.
1201 West Peachtree Street, N.W., Suite 3000
Atlanta, Georgia 30309


/s/ Ryan D. Watstein
Ryan D. Watstein
Attorney for Plaintiff