## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **BROOKWOOD FUNDING, LLC,** | |
| **Plaintiff,** | |
| **v.** | **1:14-cv-2960-SCJ** |
| **AVANT CREDIT CORPORATION, AVANTCREDIT OF GEORGIA, LLC, & DOES 1-10,** | |
| **Defendants.** | |

## DEFENDANTS AVANT CREDIT CORPORATION AND AVANT CREDIT OF GEORGIA, LLC'S MEMORANDUM IN SUPPORT OF <u>THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................1

LEGAL STANDARDS .......................................................................3

    Rule 12(b)(6) Standard for Dismissal Based on Failure to State a
    Claim..............................................................................................3

BACKGROUND FACTS ...................................................................5

ARGUMENT ...................................................................................11

I.     Plaintiff's Federal Claims (Counts 2, 3 and 8) Must Be Dismissed. ............11

    A.    The "Unfair Competition" Claim for Unregistered Trademark
        Infringement Fails Because the FAC Alleges Neither an
        Enforceable Mark nor Actionable Trademark Use (Count 2, 15
        U.S.C. § 1125(a)). ................................................................11

    B.    Plaintiff's Federal Dilution Claim Fails Because The Accused
        Fair Use Is, By Statute, Not Actionable And It Is Not Plausible
        That The Asserted "Brookwood" Mark Is Famous (Count 3)............14

    C.    Plaintiff Has Not Stated a Federal False Advertising Claim
        (Count 8)................................................................................17

II.    Plaintiff Has Failed to State any Claim under Georgia State Law...............18

    A.    Plaintiff's Georgia Trademark, Advertising, Unfair Competition
        and Interference Claims Fall with its Related Federal Claims. ..........18

    B.    "Litigation Expenses" (Count 10) Is A Remedy, Not An
        Independent Cause Of Action And Must Be Dismissed.....................20

III.   In the Alternative, Plaintiff Should Be Required to Replead its
     Improper "Shotgun" Pleading to Provide a More Definite Statement..........21

CONCLUSION ................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                         **Page(s)**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) .........................................................................4, 5

*Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*,
   77 F.3d 364 (11th Cir. 1996) ..........................................................21, 22, 23, 24

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*,
   522 F.3d 1200 (11th Cir. 2008) ..........................................................................19

*Anheuser-Busch, Inc. v. Andy's Sportswear, Inc.*,
   40 U.S.P.Q.2d 1542 (N.D. Cal. 1996) ................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 ................................................................................................3, 4, 5

*Avery Dennison Corp. v. Sumpton*,
   189 F.3d 868 (9th Cir. 1999) ..............................................................................15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................4, 5

*Brain Pharma, LLC v. Scalini*,
   858 F. Supp. 2d 1349 (S.D. Fla. 2012) ...............................................................16

*Citigroup Inc. v. Capital City Bank Group, Inc.*,
   94 U.S.P.Q.2d 1645 (T.T.A.B. 2010) .................................................................15

*Coach Services, Inc. v. Triumph Learning LLC*,
   668 F.3d 1356 (Fed. Cir. 2012) ..........................................................................15

*Cramer v. State of Fla.*,
   117 F.3d 1258 (11th Cir. 1997) .....................................................................21, 22

*First Health Group Corp. v. BCE Emergis Corp.*,
   269 F.3d 800 (7th Cir. 2001) ..............................................................................18

*Ford Motor Co. v. Lloyd Design Corp.*,
  184 F. Supp. 2d 665 (E.D. Mich. 2002) ...........................................................15

*Genlyte Thomas Group LLC v. Nat'l Serv. Indus., Inc.*,
  262 F. Supp. 2d 753 (W.D. Ky. 2003)...............................................................17

*Gold Kist, Inc. v. Conagra*,
  708 F. Supp. 1291 (N.D. Ga. 1989)....................................................................19

*Hasbro, Inc. v. Clue Computing, Inc.*,
  66 F. Supp. 2d 117 (D. Mass. 1999)...................................................................15

*Johnson Enters. Of Jacksonville, Inc. v. FPL Group., Inc.*,
  162 F.3d 1290 (11th Cir. 1998) .........................................................................23

*Jurin v. Google, Inc.*,
  No. 09-cv-3065, 2012 U.S. Dist. LEXIS 149766
  (E.D. Cal. Oct. 16, 2012) .....................................................................................8

*Lozman v. City of Riviera Beach*,
  713 F.3d 1066 (11th Cir. 2013) ...........................................................................6

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) .........................................................................24

*Monge v. Madison County Record, Inc.*,
  802 F. Supp. 2d 1327 (N.D. Ga. 2011).........................................................20, 21

*Mugworld, Inc. v. GG Marck & Assoc., Inc.*,
  563 F.Supp.2d 659 (E.D. Tex. 2009).................................................................18

*Nike, Inc. v. Nikepal Int'l, Inc.*,
  84 U.S.P.Q. 2d 1820, 2007 WL 2782030 (E.D. Cal. 2007) ...............................15

*PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*,
  598 F.3d 802 (11th Cir. 2010) ...........................................................................23

*Sinaltrainal v. Coca-Cola Co.*,
  578 F.3d 1252 (11th Cir. 2009) ......................................................................4, 5

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
 588 F.3d 97 (2d Cir. 2009) ...............................................................15

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*,
 305 F.3d 1293 (11th Cir. 2002) ........................................................22

*Tercica, Inc. v. Insmed, Inc.*,
 No 05-5027, 2006 WL 1626930 (N.D. Cal. June 9, 2006) ................18

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
 205 F.3d 894 (9th Cir. 2002) ............................................................16

*Tri-State Consumer Ins. Co. v. LEXISNEXIS Risk Solutions Inc.*,
 823 F. Supp. 2d 1306 (N.D. Ga. 2011) ..............................................19

*University of Georgia Athletic Ass'n. v. Laite*,
 756 F.2d 1535 (11th Cir. 1985) .........................................................19

*Whitney Info. Network, Inc. v. Gagnon*,
 353 F.Supp.2d 1208 (M.D.Fla. 2005) ...............................................22

*Williams v. Columbus Bar Ass'n*,
 No. 1:12-CV-04382-RWS, 2013 WL 1963822
 (N.D. Ga. May 8, 2013) ......................................................................7

## Statutes

15 U.S.C. § 1125(c) ...............................................................................14

## Other Authorities

GILSON ON TRADEMARKS, § 7A.09 (2014 online ed.).............................12

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR
 COMPETITION § 24:104 (4th ed. 2014).............................................14

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Avant Credit Corporation and AvantCredit of Georgia, LLC (together, "**Defendants**" or "**Avant**") hereby move to dismiss all claims asserted in the December 15, 2014 First Amended Complaint ("**FAC**.," Docket No. 15) filed by Plaintiff Brookwood Funding, LLC ("**Brookwood**" or "**Plaintiff**").

## **INTRODUCTION**

Brookwood and Avant both operate in the competitive online lending market.  At the heart of this case is a single "sponsored ad" that Avant ran for a brief period of time, in 2014, on the Google.com search engine.  The Avant ad—which contained multiple references to Avant's own federally registered AVANTCREDIT® mark and pointed, truthfully, to Avant's website (Avantcredit.com)—drew Brookwood's ire because Google's "Keyword Suggestion Tool" dropped the term "Brookwood" into the headline phrase "Brookwood loans – Try Avant Loans. Quick & Secure".

Brookwood's 30+ page First Amended Complaint alleges that Avant's sponsored ad constitutes trademark infringement under both state and federal law. Brookwood also pleads a hodgepodge of related claims, all based on the same operative facts.  But Brookwood is seriously off base.

-1-

Brookwood had no choice but to voluntarily amend its first pleading after Avant pointed out that Brookwood's lead claim had no chance of success— **Brookwood simply could not state a claim for infringement of a federally registered trademark, because <u>it does not own one</u>**.  The original Complaint alleged that Brookwood does business (and offers loans) under the "Brookwood" *name*, but Plaintiff does not own a federal trademark registration for the BROOKWOOD *trademark*.  In fact, the U.S. Trademark Office recently made a final determination to refuse Brookwood's trademark application, after noting that another Atlanta company (unrelated to the Plaintiff here) holds a prior registration on the mark BROOKWOOD ASSOCIATES (disclaiming "associates"), and thus has exclusive rights to that mark in the U.S. for financial services.

Despite now taking a proverbial "second bite at the apple," Brookwood's ten claims in its amended pleading still fail, for a variety of reasons.  For example, Brookwood now concedes that its federal trademark application has been "rejected" (Brookwood's own words) but fails to offer any facts to support its bald conclusion that it nonetheless does have a protectable trademark.  Furthermore, Avant's sponsored ad is simply not actionable under any theory of trademark infringement, because the ad was, obviously and on its face, merely a non-deceptive comparative ad: Avant made "nominative fair use" of the Brookwood

-2-

name to identify Brookwood, and then offered a clearly-identified alternative.  In addition, the unregistered "Brookwood" name is not "famous" enough to qualify for dilution protection, and notwithstanding Brookwood's conclusory allegations that the Avant sponsored ad was "untrue or fraudulent," Brookwood has not alleged a single fact from which a reasonable trier of fact could reach that conclusion.  All of Brookwood's claims are improperly pleaded "shotgun" style, incorporating by reference earlier paragraphs but no specific facts.  And some claims just do not pass the proverbial "straight face" test.  For example, not only is Count 10 (Litigation Expenses) a remedy rather than a cause of action, it is hard to see how the facts pleaded in the Complaint, even if presumed true, support Brookwood's assertions that Avant is "stubbornly litigious," let alone guilty of "malice, wantonness and oppression."

In short, the First Amended Complaint remains legally deficient and fails to state a single colorable claim.  It should be dismissed in its entirety.

## LEGAL STANDARDS

### Rule 12(b)(6) Standard for Dismissal Based on Failure to State a Claim.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007)).[1]   Although this pleading standard does not require overly detailed factual allegations, it "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Id.* (citing *Twombly,* 550 U.S. at 555).   A complaint cannot rest on "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly,* 550 U.S. at 555, and alleging "[t]he mere ***possibility*** the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal,* 556 U.S. at 678) (emphasis added).   In other words, merely pleading legal conclusions without specific factual support will not cut it, and a complaint that does no more than couch legal conclusions as factual allegations is doomed to fail, because legal conclusions "are not entitled to assumption of truth."  *Iqbal*, 556 U.S. at 679 ("While legal conclusions provide the framework for a complaint, they must be supported by factual allegations."); *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Twombly*, 550 U.S. at 555 (the

---

[1] In *Twombly*, the Supreme Court rejected the oft-quoted proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 563 (holding that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard," and that the phrase "has earned its retirement"). *See also Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289-90 (11th Cir. 2010) (recognizing that *Twombly* identified a new "plausibility standard").

-4-

court need not "accept as true a legal conclusion couched as a factual allegation"); *Sinaltrainal,* 578 F.3d at 1260 ("'unwarranted deductions of fact' in a complaint are not admitted as true for purpose of testing the sufficiency of plaintiff's allegations").

Practically, following *Twombly* and *Iqbal*, federal courts considering motions to dismiss should apply a "two-pronged approach": 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010), *citing Iqbal*, 129 S. Ct. at 1950. In doing so, courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the claimant would ask the court to infer. *Id.* (*citing Iqbal*, 129 S. Ct. at 1951-52 and *Twombly*, 550 U.S. at 567).

## BACKGROUND FACTS[2]

Brookwood offers consumer-lending services  (FAC ¶ 19), and alleges that it and its predecessors have offered these services under the "Brookwood" name

---

[2] The facts are taken from the allegations of the First Amended Complaint and items of which the Court may take judicial notice.  Avant's recitation of the alleged facts is not an admission of any fact and Avant reserves the right to deny any fact alleged during summary judgment, at trial, or any hearing in this matter.

4851-7547-3697.

since 2007.  (*Id.* ¶ 22.)  Brookwood pleads in wholly conclusory fashion that, since 2007, it has spent "significant time, money and effort" on "extensive advertising, marketing and promotion" of its claimed Brookwood Mark, such that its claimed mark "enjoys a high degree of distinctiveness and secondary meaning" and is "recognized by the consuming public" as an indicator of source.  (FAC ¶¶ 22-26).  Brookwood has not, however, provided any factual allegations about the amount of money it spends on advertising, its sales of goods or services under the alleged "Brookwood" trademark, or the number of consumer impressions created for it under the Brookwood name.

Notably,  Brookwood does not own a federal trademark registration, and did not even apply to register its claimed trademark until earlier last year (its trademark application was filed on January 7, 2014, *see* Ex. A hereto).[3]  Furthermore, the

---

[3] Attached hereto as Exhibits A-D are publicly available documents from the USPTO's file wrapper for Plaintiff's App. Ser. No. 86/162,901 (covering the mark BROOKWOOD for use on "consumer lending services" in International Class 36. Specifically, Avant attaches: a screenshot of the application particulars taken from the Trademark Electronic Search System (**Exhibit A**); the Examining Attorney's April 12, 2014 Office Action initially refusing the application (**Exhibit B**), Plaintiff's October 1, 2014 Response (**Exhibit C**, original attachments omitted); and the Examining Attorney's October 27, 2014 Office Action finally refusing the application (**Exhibit D**).  Avant asks the Court to take judicial notice of these documents.  *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1076 n.9 (11th Cir. 2013) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007)) (explaining that a court may consider, on a motion to dismiss, public documents of which judicial

U.S. Patent & Trademark Office (the "**PTO**") has determined that a third party—

"Brookwood Associates," based in Atlanta—actually owns prior rights in the term

"Brookwood" for financial services, based on a federal registration for the mark

BROOKWOOD ASSOCIATES as used in "investment banking services."  (*See*

Ex. B at p. 2, noting that the identical terms "Brookwood" is the "significant part"

of each mark; *see id*. at p. 3, noting "the respective marks are essentially

identical").  Plaintiff Brookwood has argued to the PTO that confusion is not likely

if its own, later, Brookwood Mark is allowed to register (Ex. C), but the Examining

Attorney assigned to the file reviewed Brookwood's arguments and "found them

unpersuasive."  (Ex. D).  Thus Plaintiff's federal trademark application on its

claimed Brookwood Mark was finally refused by the PTO a few months ago, on

October 27, 2014.

The  Defendant  entities  provide  consumer-lending  services  over  the

internet.  (FAC ¶¶ 28-29.)  Avant Credit Corporation, Inc. has been providing these

services since 2012, and AvantCredit of Georgia, LLC, since 2013.  (*Id.* ¶¶ 30-

31.)  The Defendants are together alleged to have purchased the right to have the

internet "keyword" "Brookwood loans" trigger an advertisement through Google's

---

notice may be taken); *Williams v. Columbus Bar Ass'n*, No. 1:12-CV-04382-RWS,
2013 WL 1963822, at *2 n.2 (N.D. Ga. May 8, 2013) (taking judicial notice, on a
motion to dismiss, of a trademark application).

AdWords program and to have that keyword incorporated into a sponsored link. (FAC ¶¶ 40-41). Google AdWords is an online advertising program through which entities may bid on keywords. (FAC ¶ 33.) When those keywords are searched, the entities' advertisement is triggered in a "Sponsored Links" section of the search results. (FAC ¶ 33); *Jurin v. Google, Inc.*, No. 09-cv-3065, 2012 U.S. Dist. LEXIS 149766, at *3 (E.D. Cal. Oct. 16, 2012). Additionally, an entity can pay Google to have the keyword incorporated into the ad. (FAC ¶ 34). This is normally done through Google's "Keyword Suggestion Tool," which suggests popular search terms to advertisers for bidding, and inserts the relevant keyword(s) into a generic ad prepared and submitted by the advertiser. (*Id.)*[4]

---

[4] In 2012, Judge England of the Eastern District of California offered the following helpful background summary on the Google search engine and its keyword advertising program, in *Jurin*, 2012 Dist. LEXIS 149766, *2-3:

> In operating its search engine, [Google] "indexes" websites, collecting information on the websites' contents for use in formulas that respond to search queries. Generally, when a user enters a query into [Google's] website, the search engine will process relevant sites and then return results to the user.

> Businesses routinely use the indexing and search query process to influence their website's ranking  on a results page. Prior to building a website, businesses will often utilize various available keyword tools to determine what keywords internet users are most commonly searching for.  A business will then build its site around more popular search terms in order to ensure a higher rank on a search engine results page.

The single sponsored advertisement at issue in this case included the headline: "Brookwood loans – Try Avant Loans. Quick & Secure". (FAC ¶ 44; Ex B, Dkt 15-2). The relevant ad is reproduced below for the Court's convenience:



As the Court can see, the relevant ad used the name "Brookwood" once, while the federally registered trademark AVANTCREDIT was used multiple times to identify Defendants.  (*See* **Exhibit E** hereto for a copy of Avant's registration certificate.)  In addition, the ad includes a non-deceptive "display URL" (*i.e.*, the

---

Alternatively, a business may "bid" on keywords. "Bidding" allows businesses to pay search engines a fee as a bid on selected keywords in an effort to appear on a results page as an "Ad." The higher a business's bid, the higher their "Ad" placement will be when their bid-upon keywords are searched for. "Ads" appear either at the top or along the side of a search engine results page.

Defendant allows advertisers to bid on keywords in a program called "Google AdWords." In addition to allowing advertisers to select their own keywords, the program offers a "Keyword Suggestion Tool," which suggests popular search terms to advertisers for bidding.

Additional information is available at Google's website, *see* URL http://www.google.com/adwords/.

URL www.avantcredit.com/loans directly below the headline of the ad) truthfully identifying Defendants' website as the landing page for consumers interested in clicking on the ad.  Finally, as can be seen at Exhibit B to the First Amended Complaint, the ad appeared amongst a number of "sponsored ad" results for other online lenders, including Plaintiff's own ad, which notes in the headline that it promotes the "Official" website:



-10-

## ARGUMENT

**I.     Plaintiff's Federal Claims (Counts 2, 3 and 8) Must Be Dismissed.**

> **A.     The "Unfair Competition" Claim for Unregistered Trademark Infringement Fails Because the FAC Alleges Neither an Enforceable Mark nor Actionable Trademark Use (Count 2, 15 U.S.C. § 1125(a)).**

Any trademark infringement claim requires that the plaintiff plead and prove the following: 1) ownership of a valid and enforceable trademark; 2) use of the same or a similar mark in U.S. commerce by the defendant; and 3) that the defendant's trademark use is likely to cause confusion.  Here, even assuming that Plaintiff has properly pleaded ownership of a valid and enforceable mark, its trademark claims must fail because it has not alleged actionable trademark use of that mark by Defendants.

As an initial matter, Brookwood simply has not pleaded that it owns a valid and enforceable federal trademark, and therefore cannot meet the threshold element of its federal trademark claims.  Indeed, Brookwood concedes that the USPTO has "rejected the application for registration of the Brookwood Mark because another entity has a registration for 'Brookwood.'"  (FAC ¶17).  That admission refutes its (later) assertion in Count 2 that the Brookwood name is "inherently distinctive" in the financial services industry.  (*Id*., ¶ 81).  Further, although Brookwood goes on to baldly claim it has "spent significant time, money

and effort engaged in extensive advertising, marketing, and promotion of the Brookwood Mark" (*id.*, ¶ 22), it offers nothing to support that statement but vague generalities about its marketing "on the internet," "through other channels outside of the internet" and "many other advertising and promotional efforts."  (*Id.*, ¶¶ 23-25).  In other words, **no** identification of marketing spend, sales figures, external or third party recognition, specific media mentions, awards, number of online impressions, industry recognition or any other concrete fact that would back up its claim that "Brookwood" has "acquired secondary meaning."   (*Id.*, ¶ 81).

Turning to the remaining elements of its federal infringement claim, Brookwood fares no better.  Leaving aside its wholly unsupported and speculative "information and belief" allegations, the only specific "use" of Plaintiff's mark identified in the Complaint is Defendants' alleged use of the phrase "Brookwood loans – Try Avant Loans," as the headline to a "sponsored ad," with an included link to Defendants' website, properly identified as available at www.avantcredit.com (*see* Exhibit B to the Complaint).   This is classic "nominative fair use," because the sponsored ad uses the claimed "Brookwood" mark not to refer to Defendants, but rather to refer to Plaintiff and set up a comparison or alternative.  *See* 2-7A GILSON ON TRADEMARKS, § 7A.09 (2014 online ed.) ("Use of the mark to properly refer to the plaintiff's goods, as in a

-12-

comparative advertisement, would not be actionable."); 15 U.S.C. § 1125(c)(3)(A) (defining fair use in the context of trademark dilution as including "use in connection with advertising or promotion that permits consumers to compare goods or services").  Nominative fair use is not actionable, because it cannot lead to a likelihood of confusion and is necessary to promote fair competition.

In *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) the Sixth Circuit affirmed dismissal, on a Rule 12(b)(6) motion, of claims for trademark infringement and tortious interference premised on infringement of the mark HENSLEY in advertisements including one that read: "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins. That man is Vim Hensley. NOW he has done it again and IMPROVED the PERFORMANCE of his old design." *Id.* at 607, 610-612. Like the Avant ad, *see supra*, the ad in Hensley also identified the advertiser's website. *Id.* at 608. The Sixth Circuit held that (1) there was no plausible claim of a likelihood of confusion and (2) even if there was any confusion, the ad was fair use. *Id.* at 612.

Similarly, in *Boarding School Review, LLC v Delta Career Edu. Corp.*, the court dismissed, as implausible and speculative on Rule 12(b)(6) motion, claims of trademark infringement and unfair competition premised on use of Delta's trademarks on a website providing reviews of Delta's community colleges. No. 11-

-13-

cv-8921, 2013 U.S. Dist. LEXIS 48513, at *15-16 (S.D.N.Y. Mar 29, 2013).  As in *Hensley* and *Boarding School*, the Avant advertisement clearly identifies the seller, and Brookwood's claims must be dismissed.

> **B.    Plaintiff's Federal Dilution Claim Fails Because The Accused Fair Use Is, By Statute, Not Actionable And It Is Not Plausible That The Asserted "Brookwood" Mark Is Famous (Count 3).**

In the context of Brookwood's federal trademark dilution claim, nominative fair use is a complete and statutory exemption to the claim.  *See* 15 U.S.C. § 1125(c)(3)(A) ("The following shall not be actionable as dilution . . . [a]ny fair use, including a nominative or descriptive use . . . including use in connection with (i) advertising or promotion that permits consumers to compare goods or services"). Bookwood's federal dilution claim simply cannot stand.

Moreover, dilution protection under federal law is limited to the very finite number of national "super marks" that can prove they are "famous" within the meaning of the statute.  15 U.S.C. § 1125(c).  "Fame" in this context means widespread, nationwide fame, which is generally achieved following years of exclusive use and millions of dollars in extensive national advertising.  *See id.* ("a mark is famous if it is ***widely recognized by the general consuming public of the United States*** as a designation of source of the goods or services of the mark's owner") (emphasis added); *see also* J. Thomas McCarthy, MCCARTHY ON

-14-

TRADEMARKS & UNFAIR COMPETITION § 24:104 (4th ed. 2014) ("Under both state and federal antidilution laws, the general rule is that only very well-known and strong marks need apply for the extraordinary scope of exclusivity given by antidilution laws…[the fame requirement of the federal statute] is a difficult and demanding requirement").

As the Federal Circuit has observed, "dilution fame is difficult to prove." *Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012). So, for example, the marks BUDWEISER (for beer), CITIBANK (banking services), FORD (motor vehicles), NIKE (athletic footwear and apparel) and STARBUCKS (coffee) *have* been held "famous" enough to qualify for federal dilution protection, while such well-known names as COACH (high-end leather goods), AVERY DENNISON (office supplies), CLUE (board game), FUN SHIP (cruise line) and TREK (bicycles) have all been denied federal dilution protection.[5]

---

[5] Famous marks: *Anheuser-Busch, Inc. v. Andy's Sportswear, Inc.*, 40 U.S.P.Q.2d 1542 (N.D. Cal. 1996); *Citigroup Inc. v. Capital City Bank Group, Inc.*, 94 U.S.P.Q.2d 1645, 1665 (T.T.A.B. 2010), *aff'd*, 637 F.3d 1344 (Fed. Cir. 2011); *Ford Motor Co. v. Lloyd Design Corp.*, 184 F. Supp. 2d 665 (E.D. Mich. 2002); *Nike, Inc. v. Nikepal Int'l, Inc*., 84 U.S.P.Q. 2d 1820, 2007 WL 2782030 (E.D. Cal. 2007); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009).

Marks that are not "famous" enough: *Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999); *Hasbro, Inc. v. Clue Computing, Inc*., 66 F. Supp. 2d

-15-

While the Lanham Act provides a variety of factors that may be considered by a district court in analyzing "fame," here, it is not necessary for the Court to undertake that lengthy analysis, because Plaintiff pleads ***no*** facts from which it can be reasonably inferred that the word "Brookwood" is a famous trademark. Brookwood offers only a legal conclusion, namely, that the "Brookwood mark is famous because it is widely recognized by the consuming public of the United States as a designation of the source of the services promoted by the Brookwood Mark." (FAC ¶ 95.)  This is insufficient to state a claim for trademark dilution under the Lanham Act, as Plaintiff has failed to properly plead a threshold element of the claim. *See, e.g., Brain Pharma, LLC v. Scalini,* 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) (dismissing federal dilution claim where plaintiff made only conclusory allegations of fame—"Plaintiff's mere allegation that the BPI mark is famous is insufficient to state a trademark dilution claim"); *Boarding School Review*, 2013 U.S. Dist. LEXIS 48513, at * 21-22 (granting a Rule 12(b)(6) motion and dismissing a claim of trademark dilution finding it was not plausible that the claimant could prove its mark was nationally famous even where the claimant operated for over 100 years, invested "enormous" sums of money in marketing, provided services that are highly sought after, and experienced 'extraordinary and

117 (D. Mass. 1999); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 205 F.3d 894 (9th Cir. 2002).

longstanding sales success').  Moreover, the USPTO has already determined that Plaintiff should not be awarded federal trademark rights.  (Ex. D.)

### C.   Plaintiff Has Not Stated a Federal False Advertising Claim (Count 8).

In Count 8, Plaintiff attempts to repackage the same trademark infringement allegations as false advertising.  Because the claims fail above, they likewise fail as false advertising claims.  Notably, in order to state a claim for false advertising, Plaintiff was required to actually plead specific facts tending to show that Defendants made a material false statement, about their own services or the Plaintiff's, in U.S. commerce, and that such statement was/is likely to damage Plaintiff.  Here, however, all Plaintiff has done is make formulaic allegations regarding the elements of the claim, pointing back to the same (unsupported) allegations underpinning its trademark claims.  (FAC ¶¶ 131, 132) (alleging that "Defendants falsely and misleadingly stated in online commercial advertising, described above, that their consumer financial services are related to, sponsored by, or affiliated with" Plaintiff).  The only specific "statement" alleged in the entire complaint is that Defendants had a "sponsored" ad that read "Brookwood loans – Try Avant Loans," with an included link to Defendants' website, properly identified as available at www.avantcredit.com.  That is simply insufficient to meet the required elements of a Lanham Act false advertising claim.  *See Genlyte*

*Thomas Group LLC v. Nat'l Serv. Indus., Inc.*, 262 F. Supp. 2d 753, 757 (W.D. Ky. 2003) ("parrot[ing] a portion of the statutory language without making any affirmative allegation" insufficient to state elements of false advertising claim); *see also Tercica, Inc. v. Insmed, Inc.*, No 05-5027, 2006 WL 1626930, *18 (N.D. Cal. June 9, 2006) (dismissing false advertising complaint that failed to 'allege sufficient facts showing that [accused] communications were "made for the purpose of influencing consumers to buy defendant's goods or services'"); *Mugworld, Inc. v. GG Marck & Assoc., Inc.*, 563 F.Supp.2d 659, 668-669 (E.D. Tex. 2009) (dismissing false advertising claim because without "injury and proof of reliance… [plaintiff] has no Lanham Act claim"; "allegations of likely harm" are insufficient.); *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 805-6 (7th Cir. 2001) (Section 43(a)(1)(B) offers relief only to one who 'is or is likely to be damaged by' the misrepresentation, so without actual or potential injury "there is not even a case or controversy"; holding no injury where plaintiff never "lost the business of a single [customer]").

## II.     Plaintiff Has Failed to State any Claim under Georgia State Law.

### A.     Plaintiff's Georgia Trademark, Advertising, Unfair Competition and Interference Claims Fall with its Related Federal Claims.

Plaintiff's state law trademark and unfair competition claims (**Counts 1, 4, 5, 6, 7, and 9**) also fail, because they arise out of the same operative facts as their

-18-

doomed federal counterparts, and therefore rise and fall with the federal claims. This is particularly true where, as here, there are no separate allegations made regarding possible separate liability under state law.   (*See, e.g.*, FAC ¶ 70 ("Plaintiff incorporates the foregoing paragraphs as if fully restated herein.")). *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1025 n.1 (11th Cir. 2008) (looking to federal trademark law as persuasive authority for Georgia common law trademark infringement claim); *Tri-State Consumer Ins. Co. v. LEXISNEXIS Risk Solutions Inc.*, 823 F. Supp. 2d 1306, 1326 (N.D. Ga. 2011). *Rin Tin Tin, Inc. v. First Look Studios, Inc.*, 671 F. Supp.2d 893, 902 (S.D. Tex. 2009) ("[T]he Court's finding of 'fair use' as a defense to Plaintiff's federal claims also bars Plaintiff's state-law claims.").

Similarly, Plaintiff's state law deceptive trade practices and false advertising claims must be dismissed for the same reasons as their federal counterparts.  The claims identified in **Count 6** (Georgia Deceptive Trade Practices, citing O.C.G.A. §§10-1-370 through 10-1-375) and **Count 7** (Georgia Statutory False Advertising, citing O.C.G.A §§ 10-1-420 through 10-1-427) rise or fall with Plaintiff's Lanham Act claims.  *See University of Georgia Athletic Ass'n. v. Laite*, 756 F.2d 1535, 1539 & n.11 (11th Cir. 1985); *Gold Kist, Inc. v. Conagra*, 708 F. Supp. 1291, 1303 (N.D. Ga. 1989) ("claims under § 43(a) of the Lanham Act, the Georgia Uniform

-19-

Deceptive Practices Act, O.C.G.A. § 10-1-370 . . . the Georgia False Advertising Statute, O.C.G.A. § 10-1-421, and the common law for trademark infringement and unfair competition all involve essentially the same test as the test under § 32 of the Lanham Act.")

Relatedly, because Plaintiff's allegations are not sufficient to state a claim for trademark infringement, false advertising, or unfair competition, they are also not sufficient to state a claim for tortious interference (**Count 9**).  "[A]n essential element of a claim for tortious interference with business relations is that the alleged tortfeasor used wrongful means to induce a third-party not to enter into or continue a business relationship with the plaintiff."  *Monge v. Madison County Record, Inc.,* 802 F. Supp. 2d 1327, 1338 (N.D. Ga. 2011)  Where the allegedly wrongful means are alleged to be wrongful because they violate another statute or law and the predicate claim is dismissed, the tortious interference claim should also be dismissed.  *See id.* (dismissing claim for tortious interference).

### B.   **"Litigation Expenses" (Count 10) Is A <u>Remedy</u>, Not An Independent Cause Of Action And Must Be Dismissed.**

Plaintiff's Remaining Count 10 is not a cause of action and therefore must be dismissed.  As the Georgia Court of Appeals noted: "O.C.G.A. § 13-6-11 does not create an independent cause of action. That statute merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an

additional element of his damages." *Brown v. Baker*, 398 S.E.2d 797, 799 (Ga. Ct. App. 1990); *see also Monge v. Madison County Record, Inc.,* 802 F. Supp. 2d 1327, 1339 (N.D. Ga. 2011) ("Because Monge cannot assert a separate cause of action pursuant to section 13-6-11, Count Seven does not state a claim.").  In any event, this claim must fail because there are no facts pleaded to support Brookwood's allegations that Avant has been "stubbornly litigious." Accepting Brookwood's pleaded facts as true, it sent Avant a written settlement demand on August 14, 2014, and then sued when Avant failed to meet Brookwood's unilateral 12-calendar day deadline to meet that demand (FAC ¶¶ 67-70).  Those facts simply don't support Brookwood's conclusions that Avant acted with "bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense," as set forth in Count 10. (*Id*., ¶ 144).

## III.   In the Alternative, Plaintiff Should Be Required to Replead its Improper "Shotgun" Pleading to Provide a More Definite Statement.

The Eleventh Circuit has defined a "shotgun pleading" as one  in which "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996); *see also Cramer v. State of Fla.*, 117 F.3d 1258, 1261 (11th Cir. 1997) (shotgun pleading is one which is "so disorganized and ambiguous that it is almost impossible to discern precisely" what it is that the

-21-

complaining party is claiming).   Typically, a shotgun pleading incorporates all allegations of each count in every successive count. *See Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) (explaining that each count in a "typical shotgun complaint" incorporates by reference the allegations of its predecessors, "leading to a situation where most of the counts… contain irrelevant factual allegations and legal conclusions."); *see also Whitney Info. Network, Inc. v. Gagnon*, 353 F.Supp.2d 1208, 1210–11 (M.D. Fla. 2005) ("A party may not incorporate all allegations of each count in every successive count").

Eleventh Circuit law is clear: "shotgun" style complaints are insufficient on their face and should be dismissed. *See Cramer*, 117 F.3d at 1261 (dismissing "a rambling 'shotgun' pleading"); *see also Anderson* 77 F.3d at 366-67 (dismissing shotgun pleading that references all paragraphs of the allegations).   In the alternative, a plaintiff who files a shotgun pleading should be required to provide a more definite statement.  Specifically, the Eleventh Circuit has explained:

> Under the Federal Rules of Civil Procedure, a defendant faced with a complaint such as [the plaintiff's] is not expected to frame a responsive pleading. Rather, the defendant is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement. Where, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to

-22-

> discern what the plaintiff is claiming and to frame a responsive pleading .... Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.

*Anderson,* 77 F.3d at 366–67; *see also PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010) (shotgun pleadings result in "a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice") (internal citations and punctuation omitted); *Johnson Enters. of Jacksonville, Inc. v. FPL Group., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) ("If the trial judge does not quickly demand repleader, all is lost-extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits.").

In its amended pleading, Brookwood has tried to fix some of the "shotgun" problems with its first Complaint, most noticeably by embellishing the three claims[6] that previously contained literally nothing *except* a reference back to "the foregoing paragraphs" of the Complaint.  Nonetheless, the FAC is still improper, because *every* Count still begins with the statement "Plaintiff incorporates the foregoing paragraphs as if fully restated herein" followed by no more than a

---

[6] Counts 1, 2, and 4 of the FAC were pleaded in the original Complaint as one-paragraph claims, namely, Counts 3, 4 and 6, respectively.

-23-

prohibited "formulaic recitation of the elements."   (FAC ¶¶ 72, 80, 92, 103, 111, 118, 124, 131, 136, 143); *Twombly,* 550 U.S. at 555 (a complaint cannot rest on "labels and conclusions" or a "formulaic recitation of the elements of a cause of action").  Brookwood offers 71 paragraphs of background facts, but then fails to tie its purported causes of action back to any specific portion of the facts.  That simply won't cut it in the Eleventh Circuit.  As such, the Complaint should be dismissed in its entirety.  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (dismissing "quintessential shotgun pleading").  At a minimum, Plaintiff should be required to replead to make a more definite statement. *Anderson,* 77 F.3d at 366–67.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court GRANT Defendants' motion to dismiss and award them such further relief as the Court deems just and equitable.

4851-7547-3697.

Respectfully submitted January 2, 2015.

/s/ Aaron J. Weinzierl
Aaron J. Weinzierl
*Attorney for Defendants*

Jami A. Gekas                              Brooke L. French
Aaron J. Weinzierl                         Georgia Bar No. 449989
FOLEY & LARDNER LLP                        CARLTON FIELDS JORDEN BURT, P.A.
321 North Clark Street, Suite 2800         1201 West Peachtree Street, N.W.
Chicago, Illinois 60654                    Suite 3000
Phone: (321) 832-5191                      Atlanta, Georgia 30309
Fax: (312) 832-4700                        Phone: (404) 815-2704
Email: jgekas@foley.com                    Fax: (404) 815-3415
      aweinzierl@foley.com                 bfrench@cfjblaw.com

-25-

4851-7547-3697.

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENTS

Pursuant to LR 7.1D, I hereby certify the foregoing has been prepared using

14-point Times New Roman font, as approved by LR 5.1B.

/s/ Aaron J. Weinzierl
Aaron J. Weinzierl
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2015, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will automatically send

email notification of such filing to the following attorneys of record:

Joseph D. Wargo
Ryan D. Watstein
WARGO & FRENCH LLP
999 Peachtree Street, N.E.
26th Floor
Atlanta, Georgia 30309
Phone: (404) 853-1500
Fax: (404) 853-1501
jwargo@wargofrench.com
watstein@wargofrench.com
*Attorneys for Plaintiff*

/s/ Aaron J. Weinzierl
Aaron J. Weinzierl
*Attorney for Defendants*

-26-

4851-7547-3697.